[Cite as *State v. Flory*, 2020-Ohio-5136.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                    CASE NO.  15-20-02

     v.

JAMI K. FLORY,                          O P I N I O N

     DEFENDANT-APPELLANT.


Appeal from Van Wert Municipal Court
Trial Court No. CRB 1900461

**Judgment Reversed and Cause Remanded**

**Date of Decision:   November 2, 2020**


APPEARANCES:

     *Thomas J. Lucente, Jr.* for Appellant

     *John E. Hatcher* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Jami K. Flory ("Flory"), brings this appeal from the January 21, 2020 judgment of the Van Wert Municipal Court sentencing Flory to serve 30 days in jail, with 27 days suspended, after a jury convicted her of Domestic Violence in violation of R.C. 2919.25(A). On appeal, Flory argues that there was insufficient evidence presented to convict her, and that her conviction was against the manifest weight of the evidence. She also contends that the trial court provided improper, conflicting, and outdated jury instructions regarding self-defense in this matter.

*Background*

{¶2} On September 3, 2019, Flory was charged with Domestic Violence perpetrated against her boyfriend, Eric B., in violation of R.C. 2919.25(A), a first degree misdemeanor. Flory pled not guilty to the charge and requested a trial by jury.

{¶3} Prior to the commencement of trial, Flory filed a request to include a jury instruction "regarding Self-Defense and the state's burden to prove beyond a reasonable doubt that the defendant did not act in self-defense[.]" (Doc. No. 33). Flory argued that on March 28, 2019, a new version of R.C. 2901.05 became effective that shifted the burden of proof from the defendant to prove self-defense

by a preponderance of the evidence to the State of Ohio having to disprove self-defense beyond a reasonable doubt.

{¶4} Flory's jury trial was held January 17, 2020. At the inception of the trial, the trial court indicated that it would provide an instruction on self-defense under the new provision of the revised code.

{¶5} During the trial, the State presented the testimony of Eric B., Flory's live-in boyfriend. Eric and Flory had been in a relationship for approximately three years and according to Eric's testimony they had lived together for two or three years. However, the relationship was, at times, tumultuous resulting in serious arguments.

{¶6} On September 1, 2019, Eric told Flory that he was going to go to the fair with his parents and his daughter.[1] Eric originally invited Flory and her son to go to the fair with Eric's family, but subsequently Eric told Flory that she could not go with Eric's family to the fair because Eric's family did not want her around due to Eric's and Flory's ongoing relationship issues. Eric then had a couple of shots of alcohol and went to the fair. When he returned a few hours later, he testified that Flory was unhappy because she was not included. Eric testified that he took a nap for about two hours and when he got up, Flory was severely intoxicated and angry.

---

[1] Eric's daughter did not live in the household with Eric and Flory.

{¶7} Eric testified that they had a heated argument and that he then called his friend, Jennifer B., to come over to try and calm the situation. Jennifer came over with her children and had Eric and Flory separate into different rooms. Jennifer testified that when Eric and Flory argued they were loud, angry, and said nasty things to each other. She testified that Flory was "belligerently drunk" at the time. (Tr. at 101). Nevertheless, both Eric and Jennifer testified that after Jennifer arrived Flory calmed down while Eric and Flory were separated in different rooms, and that Flory remained that way until Eric walked through the room Flory was in. Eric and Jennifer testified that the arguing then got worse than it had been previously. In fact, Jennifer testified that Flory appeared to be trying to antagonize Eric into hitting Flory, stating such things as, "just hit me." (Tr. at 84).

{¶8} Eric told Jennifer that they should leave the residence, so he grabbed some of his things. Jennifer went outside ahead of him with her children to get them into the van. Eric testified that when he got to the doorway of the residence, Flory blocked his path. Eric stated that he attempted to reach around Flory but his hand went through a glass panel, noting that there were nine or ten glass panels in the door. Eric was not sure how his hand went through the glass panel, stating he did not intentionally punch the panel and that Flory might have knocked his hand to the side as he reached for the door. Regardless, Eric's hand was cut and bleeding significantly so he went to wash off the blood.

{¶9} Eric testified that when he went to leave again Flory started shoving him and Eric ended up on the ground. Jennifer, who was outside the residence looking in, testified that she saw Flory "nudge" Eric and knock him to the ground. (Tr. at 89). Eric testified that while he was on the ground Flory kicked him in the groin and punched him in the kneecap multiple times. These were the physical acts that led to the charge of Domestic Violence.

{¶10} Jennifer testified that from where she was standing she could see Flory strike Eric multiple times in the knee, but she did not see Flory kick Eric in the groin. Subsequently Eric was able to get up and get out of the house, and at that time Jennifer took him to the hospital, where Eric had twenty-five stitches put in his hand/arm as a result of the cut from the glass. Eric maintained that he did not strike Flory at any time during the encounter and that he did not pull her hair. He did acknowledge on cross-examination that he had previously been charged with felony domestic violence in an unrelated incident but the charge was reduced to an assault. Eric had spent time in jail for the conviction and was released in the months prior to this incident.

{¶11} Meanwhile, as Eric was taken to the hospital, Flory went to her next-door neighbor's residence and banged on the door yelling for help. A woman at the neighbor's residence called 9-1-1 reporting a bloody woman who needed assistance. Officers from the Van Wert City Police Department were dispatched for an

"unknown problem" with a bloody woman. Two officers who were dispatched to the scene testified at trial, Sergeant Brandi Dershem and Officer Brock Blackmore.

{¶12} Officer Blackmore was the first officer on the scene and he went to the residence of the neighbor who had called 9-1-1. He was told that Flory had gone back to her own residence. Officer Blackmore noted broken glass and blood outside the door of Flory's residence and informed Sergeant Dershem when she arrived. The officers then initiated contact with Flory.

{¶13} The officers noted that Flory had a strong odor of an alcoholic beverage on her person, that her eyes were very bloodshot, and that she was very uncooperative. Officer Blackmore described Flory as belligerent. Officer Blackmore further testified that although he could not tell if the blood on Flory was hers, it looked to be dry and smeared.

{¶14} The officers testified that they attempted to determine if Flory needed any assistance from either medical personnel or police but Flory maintained that she did not need help and she just wanted law enforcement to leave. She stated she did not call law enforcement and that nothing had happened. Flory told officers that she tripped over a fan. Flory also stated that she had an argument with her live-in boyfriend but he left; however, she later changed the story she gave to the officers and said that the argument with her boyfriend had actually been over the phone.

{¶15} Law enforcement officers on the scene were aware that Flory had a toddler son, so the officers wanted to check on his well-being due to the blood all over the household and the broken glass. Flory would not allow law enforcement to check on the child, claiming that her son was in bed sleeping. Eventually officers detained Flory while the house was searched for the child's welfare. The child was not located, which concerned the officers because they thought the child might have left the residence. However, Flory then stated she forgot that the child was actually at his grandmother's residence. Throughout the interaction, the officers testified that Flory was loud, yelling, and screaming.

{¶16} With Flory's lack of cooperation, and her insistence that nothing had happened, officers left and returned to the station. Shortly thereafter, they were notified by different emergency services personnel that Eric was in the hospital and that his injuries could possibly be related to the incident they had just investigated. Sergeant Dershem and Officer Blackmore went to the hospital. Sergeant Dershem spoke with Jennifer while Officer Blackmore spoke separately with Eric. Eric and Jennifer related consistent stories as to what happened at the residence and the officers concluded that Flory was the primary aggressor. Eric signed a domestic violence complaint form (using his left hand because he could not write with his right hand). Officer Blackmore testified that during his interaction with Eric, Eric was calm and courteous and that Eric did not appear intoxicated though Eric did

have a slight odor of an alcoholic beverage on his person. Officer Blackmore testified that Eric refused to do a portable breath test.

{¶17} Sergeant Dershem and Officer Blackmore then returned to Flory's residence and arrested her for Domestic Violence due to the groin kick and the kneecap punches. Officer Blackmore noted that Flory still appeared intoxicated but she had calmed down from their prior interaction. No charges were filed related to the injury to Eric's hand, which Officer Blackmore described as self-inflicted. Photographs were taken of the scene and introduced into evidence.

{¶18} Flory also took a portable breath test and her BAC registered at .144. Flory was transported to jail, where she had a seizure, or what looked to be a seizure to the jail staff. Flory was then taken to the hospital to get her medically cleared for incarceration, and she later returned to jail.

{¶19} In her defense, Flory presented the testimony of her neighbor, Alexa, who testified that at the time of the incident she knew Eric and Flory, but not well. Alexa testified that her residence shared a wall with Flory's and that on the night of the incident she heard arguing. She testified that she had heard Eric and Flory arguing in the past but this was the first time in a while.

{¶20} Alexa testified that at one point she heard a loud crash, like something being hit or thrown. According to Alexa, shortly thereafter Flory came over to her house and started pounding on the door saying that Alexa needed to let her in. Alexa

opened the door and Flory was covered in blood. Flory then "collapsed" in Alexa's doorway.

{¶21} Flory told Alexa that Eric was trying to get inside and hurt her and Flory asked Alexa to call the police. Alexa testified that Flory was also screaming her son's name but Alexa did not know why because Flory's son had not been home as far as Alexa knew. Alexa testified that Flory then "like passed out almost, she was like not talking or anything for a little bit and then all of a sudden she shot up and told us not to call the police because she didn't want him getting in trouble." (Tr. at 176). However, Alexa had a friend over at the time who had already called the police.

{¶22} Alexa testified that when police first arrived Flory was at Alexa's residence but Flory immediately ran into her own apartment. Alexa spoke with police and then police went to Flory's residence.

{¶23} Alexa testified that a few days after the incident, when Flory got out of jail, Flory asked Alexa to check her house with her because Flory was scared of what might be inside. Alexa also took some photographs of Flory at that time that showed bruising on Flory's elbows and her arms, a cut on her heel, and hair missing from her head.

{¶24} On cross-examination Alexa emphasized that Flory had told her at the time of the incident that Eric was trying to get *inside* Flory's house. Alexa also admitted she did not witness any of the events in question.

{¶25} Flory provided testimony on her own behalf. She testified that at the time of the incident she was trying to maintain a relationship with Eric but he was "out gallivanting" with other people. (Tr. at 199). Flory testified that Eric had four shots of alcohol before going to the fair. According to Flory, Eric then went to the fair and came back and drank more alcohol. Flory testified that Eric then took a nap, at which time she took a picture of him drunk and napping and sent the picture to Eric's mother. Flory testified that when Eric got up from his nap he slapped her in the face for sending the picture.

{¶26} Flory testified that Eric left for a while and went to Jennifer's house, then Eric and Jennifer came back together with Jennifer's children. Flory testified that an argument started with Jennifer and then Flory told them all to get out. Flory testified that Jennifer walked out with her son and Eric walked out as well. She then testified,

> **Next thing I know, I'm still standing there at the kitchen counter, smoking a cigarette, and that window gets shattered and he comes throwing in there. I instantly asked him, I said, are you OK? Do you need some help as he's running to the bathroom, turns the shower on, runs, throws his arm underneath the shower, grabs a towel and I'm asking him, do you need help? He instantly, I'm everything but a white woman. Comes rushing at me. Like it was**

**my fault that he broke the glass. It was my fault that he hurt his hand.**

(Tr. at 209-210).

{¶27} Flory testified that Eric called her degrading names and was trying to clean himself up. She testified that afterward Eric blamed her for the injury to his hand and that he tackled her in the middle room off of the kitchen. She testified that Eric pinned her down on the carpet and pulled her hair. She testified that she then kicked Eric twice to get her off of him, then she climbed over her couch, went out the front door and went to Alexa's residence.

{¶28} Flory testified she originally wanted to call the police because she was scared but then decided she did not want to because it might be even worse for her. She testified she had been abused in multiple relationships. She testified that Eric had abused her on previous occasions, and that she had seizures in high stress situations, though she was now on medication.

{¶29} On cross-examination Flory testified that both she and Eric had been drinking on the date of the incident, having gone through "a fifth" together. (Tr. at 225). She claimed that she did not say anything to the police about self-defense or Eric being the primary aggressor when police came to her residence because she was loyal. She also testified that her hair did not fall out until she got to the jail, but maintained that Eric had pulled her hair during the encounter.

{¶30} After the case was submitted to the jury, Flory was convicted of Domestic Violence as charged. On January 21, 2020, she was sentenced to serve 30 days in jail, with 27 days suspended, and given credit for 3 days of time served. It is from this judgment that Flory appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Appellant's conviction for domestic violence was against the manifest weight of the evidence and is contrary to law.**

**Assignment of Error No. 2**
**The trial court erred in denying appellant's motion for acquittal at the close of the state's case in chief, where there was legally insufficient evidence to establish each material element of the offense beyond a reasonable doubt.**

{¶31} We elect to address the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

{¶32} In her second assignment of error, Flory argues that the trial court should have granted her Crim.R. 29 motion for acquittal because she claims that the State presented insufficient evidence to convict her. Specifically, she contends that the State failed to prove that Flory knowingly caused or attempted to cause physical harm to Eric. Flory also argues that the she was simply defending herself against Eric.

Standard of Review

{¶33} An appellate court reviews the denial of a Crim.R. 29 motion for acquittal under the same standard used to review a sufficiency of the evidence claim. *State v. Anders*, 3d Dist. Hancock No. 5-16-27, 2017-Ohio-2589, ¶ 32, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 1995-Ohio-104. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, ¶ 19 (an appellate court's function in a sufficiency review is not to determine if the evidence *should* be believed). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 317. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.); *see also State*

*v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

Controlling Authority

**{¶34}** In this case Flory was convicted of Domestic Violence in violation of R.C. 2919.25(A), which reads, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The culpable mental state, "knowingly," is defined in R.C. 2901.22(B) and it reads as follows.

> **A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.**

Analysis

**{¶35}** Flory claims that the trial court erred by denying her Crim.R. 29 motion for acquittal, contending that the State presented insufficient evidence that she acted "knowingly." Contrary to her argument, however, the State presented the testimony of two witnesses claiming that Flory struck Eric in the knee, and that she was the primary aggressor. Eric also testified that Flory kicked him in the groin while he was on the ground. It is well-established that the testimony of one witness,

if believed, is sufficient to establish the elements of an offense. *State v. Thompson*, 10th Dist. Franklin No. 16AP-812, 2017-Ohio-8375, ¶ 5.

**{¶36}** Moreover, Flory argues that she was acting in self-defense, and that Eric's testimony should not be believed, but those are really questions for weight of the evidence rather than sufficiency. Under a sufficiency review, we look at the evidence in the light most favorable to the State. *State v. Jackson*, 3d Dist. Seneca No. 13-18-18, 2019-Ohio-170, ¶ 9, citing *Jenks*, *supra*. With that standard in mind, the State presented sufficient evidence to establish the element of "knowingly" here as it is reasonable to assume that when Flory kicked Eric in the groin and punched him in the knee she was aware that it would probably cause physical harm. R.C. 2901.22. At the very least a jury could readily make an inference that the kick and the strikes were an *attempt* to cause physical harm, which is sufficient for Domestic Violence as charged under R.C. 2919.25. *See also Jackson* at ¶ 59.

**{¶37}** Moreover, under a sufficiency review, and looking at the evidence in the light most favorable to the State, the State presented sufficient evidence to establish beyond a reasonable doubt that Flory was not acting in self-defense as she claimed. There was testimony that Flory was the aggressor and significant testimony challenging Flory's credibility. Based on the evidence presented by the State we cannot find that the trial court erred by overruling Flory's Crim.R. 29 motion for acquittal at the close of the State's case and when the Crim.R. 29 motion

was renewed at the conclusion of the presentation of evidence. Therefore, Flory's second assignment of error is overruled.

*First Assignment of Error*

{¶38} In her first assignment of error, Flory argues that even if there was sufficient evidence presented to convict her of Domestic Violence, her conviction was against the manifest weight of the evidence. Specifically, she contends that Eric had previously been indicted on a charge of felony domestic violence that was reduced to an assault, that Eric had gotten out of jail for that conviction in the months before this incident occurred, and that Flory was the one injured and seeking help according to her own testimony and the testimony of her neighbor. Further, Flory argues that the issue of the primary aggressor was compounded in this case by the trial court giving conflicting, confusing, and unlawful jury instructions on the burden of proof related to self-defense.

Standard of Review

{¶39} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created

such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

Analysis

{**¶40**} The testimony in this case largely rests on credibility of the witnesses, which is a province for the jury. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). The jury in this case was given different versions of an event that occurred on September 1, 2019, and they elected to believe the story told by Eric and Jennifer, rather than the story told by Flory.

{**¶41**} However, before we make a determination regarding the weight of the evidence, we must address a separate argument made by Flory in her brief, which is dispositive of this matter. Flory emphasizes on appeal that her claim of self-defense was not properly evaluated by the jury because the jury was given improper, unlawful, and conflicting instructions on self-defense. Flory does not set out the "jury instruction" issue as its own assignment of error, which is a practice we discourage and could ordinarily result in us disregarding the argument. *See* App.R. 12(A)(2); App.R. 16. However, she did clearly raise the issue under the guise of her manifest weight assignment of error and the State specifically responded to the argument in its brief to this court therefore we will address the jury instruction argument in the interest of justice.

**{¶42}** Importantly, on March 28, 2019, prior to the incident leading to charges in this case, R.C. 2901.05(B)(1) was amended by the legislature. Previously, the statute required *the defendant* to establish self-defense by a preponderance of the evidence, placing an affirmative burden on the defendant. *See, e.g.*, *State v. Martin*, 21 Ohio St.3d 91, 94 (1986). The new version of R.C. 2901.05(B)(1), reads as follows.

> **A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.**

**{¶43}** Under the current version of R.C. 2901.05, if evidence is presented "that tends to support" that the defendant used the force in self-defense, the *prosecution* must prove beyond a reasonable doubt that the accused did not act in self-defense. *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31. In other words, the prosecution must establish beyond a reasonable doubt that the defendant was at fault in creating the situation giving rise to the affray, or the defendant did not have reasonable grounds to believe and an honest belief, even if mistaken, that she was in imminent or immediate danger of harm. *See State v. Petway*, 11th Dist. Lake No. 2019-L-124, 2020-Ohio-3848, ¶ 74; OJI 421.19.

-18-

{¶44} As noted earlier, the issue with the change in the law related to self-defense was initially raised in a pretrial motion by Flory. She filed a motion regarding jury instructions indicating that she expected to present a self-defense argument and she requested the trial court to use the appropriate burden regarding self-defense under the amended version of R.C. 2901.05(B)(1). Just before trial started, the trial court indicated that, "Your request for jury instructions, they have been provided. Jury instructions were available all week this week, and the jury instructions account for the change in the law that occurred last spring and they are the OJI jury instructions." (Tr. at 6).

{¶45} Pursuant to both the written version of the instructions in the record, and the corresponding verbal instructions that were given to the jury in the transcript, the jury was *initially* supplied the correct standard for evaluating self-defense under the current R.C. 2901.05(B)(1). The instructions read as follows.

> **SELF-DEFENSE. The defendant claims to have acted in self-defense. The defendant is allowed to use non-deadly force in self-defense. Evidence was presented that tends to support a finding that the defendant used non-deadly force in self-defense. In order to prove that the defendant did not act in self-defense, the state must prove beyond a reasonable doubt at least one of the following:**
>
> > **(A) The defendant was at fault in creating the situation giving rise to the Defendant kicking ERIC B[.] in the groin and punching him in the knee several times; or**

**(B) The defendant did not have reasonable grounds to believe and an honest belief, even if mistaken, that she was in imminent or immediate danger of harm.**

**NON-DEADLY FORCE. "Non-deadly force" means any force that does not carry with it a substantial risk that it will proximately result in the death of a person.**

**SUBSTANTIAL RISK. "Substantial risk" means a strong possibility as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist**

**AT FAULT. A defendant did not act in self-defense if the state proved beyond a reasonable doubt that the defendant was at fault in creating the situation that resulted in the injury. The defendant was at fault when the defendant was the initial aggressor and did not provoke ERIC B[.] into using force.**

**TEST FOR REASONABLENESS. In deciding whether the defendant had reasonable grounds to believe and an honest belief that she was in imminent or immediate danger of bodily harm, you must put yourself in the position of the defendant, with her characteristics, her knowledge or lack of knowledge, and under the circumstances and conditions that surrounded her at the time. You must consider the conduct of ERIC B[.] and decide whether his acts and words caused the defendant to reasonably and honestly believe that the defendant was about to receive bodily harm.**

**WORDS. Words alone do not justify the use of force. Resort to force is not justified by abusive language, verbal threats, or other words, no matter how provocative.**

(Doc. No. 31).

{¶46} Unfortunately, the jury instructions continue from this point in a manner that is not consistent with the current version of R.C. 2901.05(B)(1); rather

Case No. 15-20-02

the instructions then continue to assert a contradictory burden of proof seemingly

under the prior version of R.C. 2901.05, reading as follows.

> **BURDEN. The burden of going forward with the evidence of SELF DEFENSE and the burden of proving this defense are upon the defendant. *She must establish such a defense by a preponderance of the evidence*.**

(*Id.*) (Emphasis added.)

{¶47} This issue is compounded by the next four paragraphs reiterating that

the defendant had a burden in this matter by a preponderance of the evidence,

emphasizing this burden in various ways.

> **PREPONDERANCE OF THE EVIDENCE is the greater weight of the evidence; that is, evidence that you believe because it outweighs or overbalances in your minds the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive, or of greater probative value. It is the quality of the evidence that must be weighed. Quality may or may not be identical with quantity or the greater number of witnesses.**
>
> **CONSIDER ALL EVIDENCE. In determining whether or not an affirmative defense *has been proven by a preponderance of the evidence*, you should consider all the evidence bearing upon that affirmative defense regardless of who produced it.**
>
> **EQUALLY BALANCED. If the weight of the evidence is equally balanced or if you are unable to determine which side of an affirmative defense has the preponderance, *then the defendant has not established such affirmative defense*.**
>
> **EFFECT OF FAILURE. If *the defendant fails to establish the defense of SELF DEFENSE*, the state still must prove to you beyond a reasonable doubt all the elements of the crime charged.**

(Emphasis added.)

**{¶48}** Despite these instructions regarding law that is no longer applicable to this situation, the jury instructions then return to a proper standard under the current law.

> **If you find that the state proved beyond a reasonable doubt all the essential elements of the offense of DOMESTIC VIOLENCE ASSAULT *and proved beyond a reasonable doubt that the defendant did not act in SELF DEFENSE*, your verdict must be guilty.**
>
> **If you find that the state failed to prove beyond a reasonable doubt any one of the essential elements of the offense of DOMESTIC VIOLENCE ASSAULT or *if you find the state failed to prove beyond a reasonable doubt that the defendant did not act in SELF DEFENSE, then you must find the defendant not guilty*.**

(Emphasis added.) (*Id*.)

**{¶49}** Based on the foregoing, it is clear that the jury was left with confusing and contradictory instructions regarding the burden of self-defense, all of which was apparently overlooked by court and counsel. Nevertheless, it is important to emphasize that despite Flory initially requesting that proper jury instructions be given regarding self-defense, she did not object at trial to the jury instructions when they were given. Thus we must proceed on a plain error analysis. *See*, *e.g.*, *State v. Maine*, 4th Dist. Washington No. 04CA46, 2005-Ohio-3742, ¶ 10, citing *State v. Willford*, 49 Ohio St.3d 247 (1990).

**{¶50}** Under Crim.R. 52 "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To

constitute plain error, the error (1) must be a deviation from the legal rule, (2) must be an obvious defect in the trial proceedings, and (3) must have affected the defendant's substantial rights. *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 16; *State v. Dominguez,* 12th Dist. No. CA2011–09–010, 2012-Ohio-4542, ¶ 26. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."[2] *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of the syllabus; *State v. Phillips,* 74 Ohio St.3d 72, 83 (1995).

{¶51} Importantly, regarding jury instructions specifically, "[a] trial court's instructions to a jury must correctly, clearly, and completely state the law applicable to the case." *State v. Orians,* 179 Ohio App.3d 701, 2008-Ohio-6185, ¶ 10 (3d Dist.), citing *State v. Thomas,* 170 Ohio App.3d 727, 2007-Ohio-1344, 868 N.E.2d 1061, ¶ 15 (2d Dist.). Additionally, when an appellate court reviews jury instructions, it must examine the specific charge at issue in the context of the entire charge, and not in isolation. *State v. Thompson*, 33 Ohio St.3d 1, 514 N.E.2d 407 (1987).

---

[2] Conversely, an error is harmless where it "does not affect substantial rights" and it "shall be disregarded." Crim.R. 52(A). " '[T]he cases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction.' " *State v. Noor*, 10th Dist. Franklin No. 13AP-165, 2014-Ohio-3397, ¶ 53, quoting *State v. Ferguson*, 5 Ohio St.3d 160, 166, fn. 5 (1983).

**{¶52}** However, "[w]hen a court gives a misleading or conflicting instruction, we are unable to indulge in that presumption and must reverse, even when applying the jury instructions in their entirety analysis." *State v. Mays,* 161 Ohio App.3d 175, 2005–Ohio–2609, 829 N.E.2d 773, ¶ 37 (8th Dist.), quoting *State v. Thompson,* 4th Dist. Ross No. 92CA1906, 1993 WL 472907 at * 4 (Nov. 9, 1993). Moreover, courts have found that when a court misstates the law in its jury instructions, that fundamental fairness requires reversal under plain error analysis. *State v. Maine*, 4th Dist. Washington No. 04CA46, 2005-Ohio-3742, ¶ 17. In the past this Court has found that an inadequate jury instruction constituted plain error. *State v. Harvey*, 3d Dist. Marion No. 9-04-69 2005-Ohio-3882, ¶¶ 5-8 (finding that where a jury instruction did not set forth all of the essential elements of an offense, specifically omitting the word "deadly" from possessing a deadly weapon, plain error resulted). The First District Court of Appeals has also recently held that failure to apply the amended version of R.C. 2901.05(B)(1) is erroneous. *State v. Parrish*, 1st Dist. No. C-190379, 2020-Ohio-4807 (reversing a bench trial domestic violence conviction where the trial court stated that the defendant had the burden to prove self-defense).

**{¶53}** As we previously concluded regarding the sufficiency of the evidence in this case, a properly instructed jury could have evaluated the evidence and determined that the State had proven beyond a reasonable doubt that Flory was not

acting in self-defense. However, in this instance it is our conclusion that the jury was given conflicting and potentially misleading instructions as to whose burden it was to establish self-defense.

{¶54} Under the current law, the State has to disprove self-defense beyond a reasonable doubt. The jury here was given that instruction, but was also given a conflicting instruction, clearly stating in several instances that Flory had to establish self-defense by a preponderance of the evidence. This is an incorrect statement of the law and could be misleading for the jury. For example, the jury could have found that Flory's failure to prove self-defense by a preponderance of the evidence automatically established that the State negated self-defense beyond a reasonable doubt without further consideration.

{¶55} In sum, since the jury was given an incorrect and contradictory instruction that was not in compliance with the current law, we are unable to properly address or review the weight of the evidence argument raised under the first assignment of error. Instead, we are compelled to find that under the particular facts and circumstances of this case, Flory's first assignment of error must be sustained but only as to the issue of the improper jury instruction. We emphasize that we are not sustaining the assignment of error as to the weight of the evidence; rather, we are finding that the conviction must be reversed and remanded for a new

trial wherein the proper jury instructions are provided. To this extent only, Flory's first assignment of error is sustained.

*Conclusion*

{¶56} For the foregoing reasons Flory's second assignment of error is overruled, and her first assignment of error is sustained only as to the jury instruction issue. This cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**