OPINION
{¶ 1} This case is before us on the appeal of Michael Rollins from his conviction on charges of breaking and entering. After a jury trial, Rollins was convicted and was sentenced to one year in prison. Rollins has already completed his sentence. On appeal, Rollins raises as a single assignment of error, that "[t]he law enforcement official that stopped the automobile where Appellant was a passenger had no probable cause to stop the vehicle and consequently the evidence obtained due to the unreasonable search and seizure should have been excluded from the trial."
 {¶ 2} After reviewing the record, we find that the assignment of error is without merit. Accordingly, the judgment of the trial court will be affirmed.
 I {¶ 3} Rollins was arrested following a stop of an automobile in which he was a passenger. The stop occurred around 2:20 a.m., on February 26, 2004. About twenty minutes earlier, a witness (Jessica Miller) had reported seeing an older model, white sedan leaving the scene of a break-in at a Speedway station on Route 40 in Harmony, Ohio. Miller lived about fifty yards from Speedway and heard the alarm go off around 2:00 a.m. She had heard the alarm before many times. Miller looked out a window of her house and saw one person walking kind of nervously around the front of the gas station. She then saw two other people come out in front of the station. Miller could not see their faces, but described them as wearing dark clothes. One individual had on a large coat, like a down jacket. Miller saw the individuals leaving in a white car, going east, and called 911.
 {¶ 4} The police received calls from both Miller and the alarm company. Deputy Shillito responded to the calls, and found that Speedway's front window had been broken out. The store had been ransacked and display cases for cigarettes had been opened. Shillito found bolt cutters on the front counter, which had apparently been used to cut the master padlocks on the display cases. A small amount of blood was also found on a cigarette case behind the counter.
 {¶ 5} On the night in question, Deputy Stalder was on patrol when he received the call about the break-in. Stalder was told the car was a white, older model automobile and that two to four people were in the car. The night was cold, and Stalder did not pass any traffic after he received the call, until he saw a white-colored vehicle with at least two occupants, traveling westbound on Columbus Road, north of Route 40. Stalder told his sergeant that he was going to stop the vehicle because he had not passed any other cars matching the description and because the car had only one headlight and/or no license plate light. Stalder saw the white car four or five minutes after he received the original call from dispatch.
 {¶ 6} The white car was being driven by a female, and had two male passengers, one in the front and one in the back. Stalder was dispatched about 2:10 a.m., and made the stop about 2:20 a.m. When Stalder approached the vehicle, he asked the female where she had been. She said she had been at her uncle's or a friend's residence at a trailer park, but she could not produce a name. She also could not produce a lot number for the trailer.
 {¶ 7} By this time, Sergeant Reed had arrived on the scene. Reed and Stalder asked the men in the car where they had been, and they said the same thing as the driver. However, they also could not identify the friend that they had allegedly been visiting. Around this time, Stalder was advised that the police had found cigarettes thrown around on the floor of the Speedway and had also found blood on some glass.
 {¶ 8} While talking with the two men, Sergeant Reed saw a handgun on the floorboard of the front seat passenger and called out to Stalder. In view of this development, the passengers were removed from the car and were handcuffed and arrested. Stalder noticed that the back-seat passenger (later identified as Rollins) had cuts and blood on his arms when he patted him down. The cuts were about an inch and a half long, with smeared blood around the wound. Rolllins' jacket also had a tear on the sleeve.
 {¶ 9} Detective White later examined the trunk of the vehicle, pursuant to a search warrant, and found about 65 cartons of Marlboro, Winston, and Camel cigarettes. This matched the amount and brands of cigarettes that had been taken from the Speedway station. In addition, the date-stamps on the cigarettes in the trunk matched those on the stolen cigarettes. The police also found four toboggans or ski masks in the car. This was consistent with a video of the break-in, which contained footage of two individuals who were wearing ski masks.
 {¶ 10} Rollins was indicted on March 8, 2004, on charges of having a weapon under disability, carrying a concealed weapon, and breaking and entering. Counsel was appointed for Rollins, but did not file either a pre-trial motion to suppress, or a motion in limine. Rollins' assignment of error does not specifically allege ineffective assistance of counsel, but is based on the fact that the police lacked probable cause to stop the automobile.
 {¶ 11} Before addressing the probable cause argument, we will briefly address some preliminary matters. In his brief, Rollins raises issues about mootness, standing, and plain error. Because the State concedes that the appeal is not moot, even though Rolllins has served his sentence, we need not address mootness.
 {¶ 12} Regarding standing, the State argues that Rollins lacked standing to challenge the stop because he did not have a legitimate expectation of privacy in the vehicle and none of hisFourth Amendment rights were violated by the stop. We disagree, and find that Rollins does have standing. The Ohio Supreme Court has said that "[b]oth passengers and the driver have standing regarding the legality of a stopping because when the vehicle is stopped, they are equally seized, and their freedom of movement is equally affected." State v. Carter, 69 Ohio St.3d 57, 63,1994-Ohio-343, 630 N.E.2d 355. See, also, State v. Lodge,
Greene App. No. 2004-CA-43, 2005-Ohio-1908, at ¶ 21
 {¶ 13} The third preliminary issue that has been raised is "plain error." In this regard, Rollins claims that he should be allowed to raise the lack of probable cause for the stop, even though trial counsel failed to object at trial. The State responds that this is not a situation of "plain error" because the trial court's error, not the error of trial counsel, is involved in the plain error doctrine. In addition, the State contends that the error did not affect the outcome of the trial.
 {¶ 14} As a initial point, we note that the State's description of the plain error doctrine is incorrect. "Plain error" is used where a party fails to bring a particular issue to the attention of the trial court, and then argues on appeal that the trial court erred because it did not decide the issue, or decided it incorrectly. In such situations, any alleged error of the trial court, or in the proceedings, is deemed waived, unless, "but for the error, the outcome of the trial would clearly have been different." State v. Nelson (Mar. 9, 2001), Champaign App. No. 00CA12, 2001 WL 227389, *2, citing State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804. Therefore, plain error involves both alleged omissions of trial counsel and alleged error on the part of the trial court — or in the trial proceedings. Frequently, the issue is framed on appeal as "ineffective assistance of trial counsel." See, e.g., Nelson,2001 WL 227389, at *3 (noting that the defendant had alleged that the plain error doctrine should be applied because trial counsel failed to file a motion to suppress evidence).
 {¶ 15} In plain error situations, trial counsel must first commit some type of error or omit some type of action in the trial court, like failing to object to evidence, failing to object to jury instructions, or failing to file a motion to suppress evidence. If this happens, and the defendant raises the matter on appeal, an appellate court will consider the issue only if the trial outcome would clearly have been different, absent the alleged error in the trial court proceedings.
 {¶ 16} In the present case, Rollins' trial counsel failed to raise the alleged lack of probable cause for the automobile stop. Thus, any error in admitting evidence gained as a result of the stop would be waived for purposes of appeal unless the trial outcome would have clearly been different if an objection had been made. Another way of putting this in the context of ineffective assistance of trial counsel is that counsel's failure to file a motion to suppress or to object must have been deficient performance and must have caused prejudice to the defendant. 2001 WL 227389, at *3. See, also, State v. Lester
(1998), 126 Ohio App.3d 1, 6, 709 N.E.2d 853 (holding that "[t]heSixth Amendment right to effective assistance of counsel does not require defense counsel to file a motion to suppress evidence where none of the defendant's constitutional rights were violated").
 {¶ 17} In State v. Brown, Montgomery App. No. 20336,2004-Ohio-4058, we noted that:
 {¶ 18} "[t]he Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. * * * A traffic stop by a law enforcement officer must comply with the Fourth Amendment's reasonableness requirement. * * * A police officer may stop and detain a motorist when he observes a violation of the law, including any traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under Terry." Id. at ¶ 11 (citations omitted).
 {¶ 19} We also said in Brown that "the duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable." Id. at ¶ 13.
 {¶ 20} Notably, police do not need probable cause to stop a vehicle. Reasonable suspicion is sufficient. In the present case, Rollins claims that the original stop was unreasonable because Deputy Stalder did not have a sufficiently precise description of the vehicle. However, we do not agree that the description was insufficient, under the circumstances, to satisfy the "reasonable suspicion" requirement.
 {¶ 21} In the first place, the crime occurred in the very early morning hours, when very few vehicles would have been on the road. In fact, Deputy Stalder testified that he did not pass any vehicles between the time of he received the report and when he saw an older model white car with at least two occupants — which matched the description he had been given. In addition, the vehicle had either one headlight out or no license plate light — which would have justified a stop even without the description of the car as one that had been involved in illegal activity.
 {¶ 22} After the car was stopped, the officers had additional specific and articulable facts that justified further detention, as the driver and passengers were not able to identify the name of the individual they had allegedly been visiting. This was a very suspicious circumstance, and would have reasonably justified a conclusion that the occupants of the car had been engaged in illegal activity.
 {¶ 23} "`Reasonable suspicion entails some minimal level of objective justification for making a stop-that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' * * * We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances `through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" 2004-Ohio-4058, at ¶ 16 (citations omitted). See, also, State v. Myers (1990), 63 Ohio App.3d 765, 771,580 N.E.2d 61.
 {¶ 24} Finally, the officers saw a gun on the floor of the car, in plain view, giving them a reason to handcuff the occupants of the car and investigate further. In light of these facts, even if trial counsel had objected to admission of the evidence, the court would not have sustained the objection. As a result, there was no plain error, or, indeed, any error at all, because the officers did not violate Rollins' constitutional rights.
 {¶ 25} Based on the preceding discussion, the single assignment of error is overruled and the judgment of the trial court is affirmed.
Grady, P.J., and Fain, J., concur.