[Cite as *State v. Terry*, 2024-Ohio-2935.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29972 |
| | : | |
| v. | : | Trial Court Case Nos. TRC 2200947 A-C; CRB 2200364 A-C |
| | : | |
| AMANDA L. TERRY | : | |
| | : | (Criminal Appeal from Municipal Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 2, 2024

. . . . . . . . . . .

CHRISTOPHER A. DEAL, Attorney for Appellant

ERIK R. BLAINE, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Amanda L. Terry appeals from her convictions for operating a vehicle while under the influence of alcohol ("OVI") and disorderly conduct in the Vandalia Municipal Court. For the reasons that follow, the judgment of the trial court is affirmed.

**Procedural History**

{¶ 2} In the early evening of February 25, 2022, Terry was cited by an Ohio State Highway Patrol trooper for two counts of OVI and one count of failure to control (M.C. No. TRC2200947), Subsequently, she was also charged with obstructing official business, disorderly conduct, and possession of marijuana (M.C. No. CRB2200364).   The charges arose after Terry crashed her vehicle into a guardrail and then into a U-Haul truck while traveling west on Interstate 70 in Vandalia.   Terry pled not guilty.

{¶ 3} In April 2023, Terry filed a motion to dismiss the OVI charges or, in the alternative, for a "factual determination" as to the time the alcohol found in her car had been purchased.   She sought dismissal of the OVI charges based on the failure of responding officer to seize a bottle of Jagermeister found in her car and the receipt for its purchase, which allegedly reflected that Terry had purchased the alcohol 30 minutes before the accident.   Alternatively, she sought a determination from the court as to the time at which the alcohol had been purchased.   The court overruled the motion because Terry had not been charged with "consumption in a motor vehicle or open container."

{¶ 4} In June 2023, Terry filed a plea of not guilty by reason of insanity.   She requested evaluations of her sanity at the time of the offenses and of her competency to stand trial; the court granted the requests.   At a hearing in September 2023, both parties stipulated to evaluations from the Ohio Forensic Psychiatry Center.   The court found that Terry did not meet the criteria for insanity and was competent to stand trial.

{¶ 5} In September 2023, Terry filed two motions in limine.   The first motion sought to exclude certain language she had used at the scene of the accident.   The court overruled the motion, finding that Terry's statements were evidence of her state of mind

and level of impairment. The second motion sought to exclude portions of the videos of her arrest, specifically parts of the field sobriety testing, evidence regarding her blood test after the stop and her hospitalization for the procedure, portions of the videos displaying conversations with third parties without a prior determination of admissibility, and any reference to prior OVI convictions or a prior refusal to submit to a chemical test. It appears that the trial court did not rule on this motion and therefore implicitly denied it.

{¶ 6} On September 11, 2023, the day set for trial, the State filed a motion in limine seeking to exclude a proposed exhibit of photos of Terry relating to a 2006 criminal case in which she was the victim of domestic violence. Prior to the start of the proceedings, it became apparent that Terry had brought the proposed exhibit to court and may have shown it to prospective jurors. The court and the parties agreed to continue the matter with a new jury. The prospective jurors were excused, and the court advised Terry not to bring the proposed exhibit of photos back to court for trial. The prosecutor then recited into the record an agreement reached by the parties for trial. The parties agreed to exclude the evidence related to the following: the horizontal gaze nystagmus field sobriety test; the blood test results; the forfeiture of Terry's vehicle; and a field sobriety test for drug impairment. The court also granted the State's motion in limine regarding the proposed exhibit of photographs of Terry's injuries from the prior domestic violence incident. The court overruled a specific objection by Terry to the testimony of one witness to the accident, as long as he testified about what he had observed before the video of his statements to law enforcement was played for the jury.

{¶ 7} At a final pretrial on October 16, 2023, the court again advised Terry not to

bring photos of her prior injuries to court. She responded that her "severe traumatic brain injury" was part of her defense. The court advised Terry that, having been found sane and competent to stand trial, her prior injuries were not relevant. Terry indicated that she did not understand and noted that she also suffered from post-traumatic stress disorder (PTSD). The court advised Terry, "You can't get up there and blurt out that you were * * * a victim of something in the past or you suffered an injury in the past. That's not relevant."

{¶ 8} The court also advised Terry of the penalties she could face if convicted. The prosecutor then read the State's plea offer into the record. After a lengthy discussion with the court, Terry rejected the plea offer. The court ascertained her understanding of the minimum, maximum, and mandatory penalties she faced.

{¶ 9} The jury trial was held in October 2023. At the conclusion of the State's case, defense counsel renewed his motion to dismiss the OVI based on the loss of potentially exculpatory evidence, namely the bottle of Jagermeister; the court overruled the motion. Defense counsel also moved for an acquittal on the charges of obstructing official business, disorderly conduct, and possession of marijuana. The court overruled the motion regarding obstructing official business and disorderly conduct, but it dismissed the possession of marijuana charge because the State had not presented evidence on that offense. Defense counsel renewed the motion for acquittal at the conclusion of trial, and the court overruled the motion. Terry was then found guilty by the jury of the OVI offenses and disorderly conduct and not guilty of obstructing official business. The minor misdemeanor failure to control charge was tried to the bench; Terry was found guilty and

fined.   On October 30, 2023, Terry filed a motion for acquittal or, in the alternative, for a new trial.

{¶ 10} At sentencing on October 31, 2023, the court overruled Terry's October 30 motion for acquittal or new trial.   For the OVI in violation of R.C. 4511.19(A)(2) (a prior OVI within 20 years and refusal of a chemical test), the court imposed 365 days in jail, with 60 days suspended on the condition that Terry successfully complete mandatory drug and alcohol counseling and credit for 15 days served.   The court ordered that Terry be placed on a habitual OVI offender registry and issued a forfeiture notice for her vehicle. The court also imposed probation for five years; as conditions of probation, Terry was ordered to complete mental health counseling and maintain sobriety, with no criminal or traffic violations.   The court suspended Terry's driver's license for 10 years and imposed a fine of $850, plus court costs.   For the other offenses, the trial court declined to impose a jail term or financial sanctions. Although the trial court did not expressly merge the two OVI offenses, it should have done so, and it effectively did so because it imposed no sentence on the second offense.   As such, we view the judgment as imposing only one OVI conviction.

{¶ 11} Terry appeals from her convictions. On appeal, she challenges only the OVI conviction.   Before considering Terry's arguments on appeal, we will review the evidence presented at trial.

**Jury Trial**

{¶ 12} Dylan Sagers testified that, on February 2, 2022, he and Terry were both travelling westbound on Interstate 70 when he observed Terry going back and forth over

the shoulder of the road and into the middle lane of traffic. He also testified that she almost came to a complete stop in front of a semi-truck. Sagers called 911 out of concern for her erratic driving. While Sagers was speaking to the 911 dispatcher, Terry struck a U-Haul truck near the interchange with Interstate 75 and then came to a stop on the side of the highway. Sagers, who was driving a tow truck, pulled behind Terry and turned on his hazard lights.

{¶ 13} Sagers approached the driver's side door of Terry's vehicle while he was still on the phone with the 911 dispatcher. Sagers asked Terry if she was okay, and she told him that she was. He asked her where she was coming from, and Terry told him Brookville, which wasn't consistent with her direction of travel. Sagers noticed that her "speech was very slurred." As a highway patrol officer arrived, Terry told Sagers that Sagers could not keep her there, and she tried to start her vehicle. Sagers believed that if her vehicle had been operable, Terry would have left the scene, but her vehicle had mud on it and was very heavily damaged from the accident. Sagers was speaking to Terry within moments of the accident, and he did not observe her consume any alcohol. He provided a statement to the responding officer and left the scene.

{¶ 14} Trooper Austin Kleman of the Dayton post of the Ohio State Highway Patrol testified that he responded to Terry's accident on an initial report of a reckless driver on westbound I-70 that was updated to a vehicular crash. Kleman was dispatched at 5:30 p.m. and was on scene at 5:40 p.m. The weather was "gloomy," with light, steady rain, and Terry's vehicle, a Jeep SUV, had "disabling damage." According to Kleman, one or both of the front tires were flat, and there was "very heavy damage all throughout the left

side and some minor damage" on the right side of her vehicle. Terry was alone in her Jeep, and Kleman observed "a very strong odor of an alcoholic beverage" coming from the interior; Kleman also observed that Terry had "very slurred speech, heavy speech" and glassy, bloodshot eyes. He asked Terry if she had been drinking that day, and she said she had not.

{¶ 15} Kleman ordered Terry out of the vehicle to further investigate his suspicion that she was intoxicated. He testified that she had a strong odor of alcohol on her person and was very lethargic and slow to respond; he also observed an open bottle of alcohol in her vehicle. Terry told Kleman that she was fine and had not been involved in an accident or hit anything. Kleman initially placed Terry in his cruiser for her safety because of the weather, their proximity to interstate traffic, and the presence of other witnesses at the scene. Once the other witnesses left, Kleman turned his attention back to Terry and continued the OVI investigation.

{¶ 16} Kleman testified that he was a "traffic crash reconstructionist" with 200 to 300 hours of crash investigation experience. According to Kleman, based upon all the evidence at the scene and the damage analysis that was completed, it was determined that Terry struck a guardrail as well as a U-Haul truck; she struck the guardrail with the passenger side of the vehicle, came back onto the highway, and then struck the U-Haul with the driver's side of her vehicle.

{¶ 17} Kleman testified that he had been trained in administering the National Highway Transportation Safety Administration standardized field sobriety tests and administered several tests with Terry. Kleman administered the standardized walk-and-

turn test, in which he was trained to look for the following clues of impairment: moving out of the starting position while the instructions were being given; starting the test before being instructed to do so; failing to touch the feet heel-to-toe; stepping off the line; stopping or pausing during the test; raising the hands six inches or more at any time during the test; turning improperly; and losing balance in the turn. Terry exhibited all eight clues for impairment during the test.

{¶ 18} Kleman next attempted to administer the standardized one-leg-stand test to Terry. According to Kleman, after being placed in the starting position, she repeatedly asked why she was being told to do things. When asked if she would complete the test, Terry responded, "No, I'm good." She also refused to consent to a chemical test.

{¶ 19} Kleman placed Terry under arrest for OVI and put her in his cruiser in handcuffs to complete the crash investigation. Terry used foul language and used a racial slur in addressing Kleman. Kleman testified that, in his experience, impaired drivers are often belligerent. While she was in the cruiser, Terry slid around and repeatedly tried to kick and then open the cruiser door before lying down. This was a "huge red flag" to Kleman, who stated that when someone is impaired, there is a concern that the person may fall over and aspirate. As such, he opened the door of his cruiser and warned Terry about her behavior. Terry repeatedly addressed Kleman as "Travis," although his name is Austin.

{¶ 20} Kleman charged Terry with obstructing official business and disorderly conduct, and he conducted an inventory search of Terry's vehicle incident to her arrest.

{¶ 21} Kleman was wearing a body camera at the time of his encounter with Terry,

and his cruiser was equipped with front and rear facing cameras. The videos from these cameras were played for the jury.

{¶ 22} On cross-examination, Kleman testified that he put Terry in handcuffs within 20 minutes of the stop and administered the walk-and-turn test more than 30 minutes after being notified of the accident. Kleman testified that he had not investigated any cause of Terry behavior other than intoxication, such as her alleged past head trauma, given his observations and other evidence. Kleman testified that his analysis of the vehicle was limited to a visual inspection, and he did not perform an accident reconstruction.

{¶ 23} Kleman did not find any alcohol in the vehicle other than the Jagermeister; he did not look for a receipt or know if one was in the bag. Kleman documented the presence of the liquor bottle and left it in Terry's vehicle. At trial, he identified the Ohio State Patrol Policy for administrative inventories. When asked if, pursuant to the policy, he should have seized and preserved the bag and bottle, Kleman responded, "It's not routine that we collect alcohol, whether open or unopened." Kleman acknowledged that he had been investigating an OVI offense, but he stated that he had not intended to charge Terry with any offense based upon the presence of the bottle of Jagermeister. On redirect, Kleman acknowledged that Terry was of legal age to purchase alcohol and was in lawful possession of the bottle, such that it was not contraband.

{¶ 24} Terry testified that, on the date of the accident, she travelled to the State House in Columbus from her home in Kettering for a hearing on a pending bill known as Aisha's Law, which related to victim's of domestic violence. Terry left for Columbus

around 11:00 a.m. for a 1:30 p.m. hearing on the bill; she intended to speak in support of the bill, but it was never brought to the floor, and the hearing was adjourned at 4:00 p.m. Terry had not eaten all day, and she was tired and upset about the bill when she headed home.

{¶ 25} Terry had planned to pick up her boyfriend at his mother's house on her way home; she wanted to change her clothes, and she had "raccoon eyes" from crying and wanted to wash her face. Terry stopped at a Speedway gas station next to Miami Wine and Liquor on State Route 201 at about 5:00 p.m. She purchased a bottle of Jagermeister at the liquor store, and it was put into a brown paper bag with the receipt. She then went into the Speedway, bought a Red Bull, and changed her clothes and shoes in the bathroom, all of which took about 20 minutes.

{¶ 26} Terry testified that, as she got onto Interstate 70, she drove over rumble strips as she tried to merge into traffic; her vehicle began vibrating and bouncing, and the steering wheel was "pulling." She then hit the concrete barrier with the left side of her vehicle. She felt a tire pop, and then she hit a U-Haul before safely maneuvering onto the shoulder. Terry denied that there was any mud on her vehicle. She also stated that she did not know anyone in Brookville and had never been there.

{¶ 27} Terry testified that she was in shock and did not understand what had happened to her vehicle. She was trying to collect herself, her adrenalin was pumping, and she was "a bit confused and in shock." She grabbed the bottle of Jagermeister, opened it, and drank it "to try to calm down." She testified that she next saw her vehicle at Englewood Tow, and the liquor bottle and bag were missing; she did not know what

had happened to them. She identified a photo of the liquor bottle and bag in her car at the scene. Terry also identified a photograph of a receipt from a subsequent purchase at the same liquor store, noting that it showed the store's address, and the day, date, and time of the purchase. She suggested that, if the receipt for the Jagermeister had been retained, it would have established that she had purchased it close in time to the accident.

{¶ 28} Terry testified that she was not able to do the one-leg-stand test due to back problems, including cervical spinal stenosis and a severely compressed spinal cord. She did not recall if she had relayed that information to Trooper Kleman, because she "wasn't in that state of mind," was confused, and was still trying to process what was going on.

{¶ 29} At trial, Terry stated that she was "ashamed and embarrassed" by her behavior in the cruiser, describing it as "panic" and "confusion"; after being handcuffed and placed in the cruiser, she was unable to breathe, triggering a panic attack. Terry stated that she did not trust law enforcement based on her experience, and she had previously suffered a traumatic brain injury, which she had mentioned to Kleman.

{¶ 30} On cross-examination, Terry stated that her erratic driving prior to the accident was due to a "mechanical failure" of her vehicle. She did not recall talking to Sagers at the scene, and she did not know how much liquor she drank at the scene because she drank it straight from the bottle. According to Terry, her behavior resulted from PTSD, panic, and anxiety combined with the liquor on an empty stomach. She acknowledged that the video showed that she told Trooper Kleman that she had not been drinking and that she used profanity, which she does in "severe stress and distress."

## Assignments of Error and Analysis

{¶ 31} Terry raises seven assignments of error on appeal. Her first assignment is:

THE CONVICTION ON * * * OVI [WAS] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION BECAUSE THERE WAS NO EVIDENCE THAT MS. TERRY DROVE HER VEHICLE WHILE INTOXICATED.

{¶ 32} Terry argues that her erratic driving was caused by the mechanical failure of her vehicle and that she suffered from PTSD and a panic attack. She argues that the evidence, particularly the videos, supported the conclusion that she drank a large amount of alcohol in a very short period of time after the accident, because she appeared to become "more and more intoxicated" as the videos progressed.

{¶ 33} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 34} In contrast, "a weight of the evidence argument challenges the believability

of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 35} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render a conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 36} R.C. 4511.19 proscribes OVI and states in relevant part:

(A)(1) No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply:

(a) The person is under the influence of alcohol * * *.

* * *

(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty

to a violation of this division, a violation of division (A)(1) of this section, or any other equivalent offense shall do both of the following:

(a) Operate any vehicle * * * within this state while under the influence of alcohol, a drug of abuse, or a combination of them;

(b) Subsequent to being arrested for operating the vehicle * * * as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶ 37} Given the testimony of Sagers and Trooper Kleman regarding their interactions with Terry and her arrest, we cannot conclude that her OVI conviction was not supported by sufficient evidence or was against the manifest weight of the evidence. Sagers described Terry's erratic driving immediately prior to the accident and her undeniably false story that she was travelling from Brookville while heading west on Interstate 70 near Interstate 75, a story she changed at trial. Sagers and Kleman described the indicators of impairment they had observed, including slurred speech and glassy, bloodshot eyes. Neither of the State's witnesses observed Terry consume alcohol at the scene, and the jury could have reasonably concluded that it defied logic to believe that Terry only became intoxicated in the moments following the crash. Kleman was on scene within 10 minutes of being dispatched. Sagers, who immediately stopped and approached Terry after the accident, testified that he believed she would have fled

the scene but for her disabled vehicle. Terry failed the standardized walk-and-turn test, and she was unable or unwilling to complete the standardized one-leg-stand test.

{¶ 38} In the front cruiser camera video, Sagers, the driver of the U-Haul truck, and Klemen were visible as Kleman pat Terry down before placing her in the cruiser; extensive damage along the driver's side of the Jeep was also visible. The videos also depicted the administration of the walk-and-turn test and Terry's inability to do the one-leg stand, as Kleman described, and Terry could be heard using a racial slur to address Kleman.

{¶ 39} The body camera and rear interior cruiser camera videos were also consistent with Kleman's testimony. When Kleman asked Terry what had happened after approaching her door, she shrugged and initially did not answer, then she denied that she had hit anything and stated that nothing had happened. When asked for her license, Terry appeared confused and picked up what appeared to be a purse, but she put it back down without providing her license. When asked to step out of the car, Terry initially refused. Her eyes appeared glassy, she seemed disoriented while looking around, and she was unsteady on her feet when she got out of her vehicle. When Kleman placed Terry in his cruiser for safety, she initially refused to put her right foot inside the cruiser so Kleman could shut the door, saying, "I can't."

{¶ 40} On the video, Sagers told Kleman that Terry had entered the interstate at Brandt Pike and had been "all over the road." He stated that she drove into the "ditch," through the grass, hit the guardrail, returned to the road, and hit the truck. When Kleman returned to Terry in his cruiser, he repeatedly told her to stay in the vehicle as she tried to get out. When Kleman removed Terry from the cruiser, he told her that he suspected

she was under the influence, and she told him she had last consumed alcohol six weeks prior to the accident. She advised Kleman that she had suffered a traumatic brain injury 12 years earlier. Terry stated that she had had no recent injuries to her neck, back, or knees, and that she could walk with no problems. Kleman's gave detailed instructions and demonstrated the walk and turn test, as reflected on the video. The video showed Terry exhibiting eight clues of impairment.

{¶ 41} After the field sobriety test, Trooper Kleman attempted to place Terry under arrest; she was uncooperative and warned repeatedly that she was "going to catch another charge." Terry also told Kleman to get his "s**t together" and addressed him with a racial slur and other expletives multiple times. He repeatedly told her that he needed her to relax, to which she responded, "I don't care what you need." Later, while Terry was in the cruiser, she continued to call Kleman names and tell him she hated him. She fell over sideways multiple times. When she was advised that she was going to jail, Terry responded in part, "I'm going to f**k you up." When Kleman tried to place a seat belt around Terry, she kicked at the door to the cruiser and repeatedly said "Please help me" and "I can't breathe." Kleman required the assistance of another officer who had arrived on the scene to place Terry in the seatbelt. Kleman told her to stop resisting and threatened to tase her when she refused multiple times to put her foot in the cruiser during the struggle. Terry first demanded to be taken to court and the magistrate, and then stated, "take me to your f*****g leader." She called Kleman a "f*****g horrible person" and addressed Kleman as "Travis" repeatedly. Finally, Kleman advised Terry of the consequences of refusing a chemical test pursuant to BMV 2255; he then asked her if

she intended to submit to the chemical test, and she responded, "I will never, ever, ever, ever."

{¶ 42} The videos and Sagers's and Kleman's testimonies refuted Terry's assertion that there was "no evidence" that she drove her vehicle while intoxicated. She was glassy-eyed and disoriented, refused to follow commands, was unable to complete field sobriety tests, and acted belligerently. Although Terry asserts that she became impaired after the accident, she was not seen consuming alcohol at the scene within moments of the accident, and a rational juror could have found the essential elements of OVI proven beyond a reasonable doubt. In other words, Terry's conduct and driving supported the conclusion that she was impaired before the accident occurred, and the jury was free to so conclude. The jury clearly credited Sagers's and Kleman's testimonies over Terry's, and we defer to its assessment of credibility. Because Terry's OVI conviction was supported by sufficient evidence and not against the manifest weight of the evidence, her first assignment of error is overruled.

{¶ 43} Terry's second assignment of error is as follows:

TROOPER AUSTIN KLEMAN TESTIFIED THAT HE WAS [A] TRAFFIC CRASH RECONSTRUCTIONIST. HOWEVER, HE WAS NOT QUALIFIED BY THE STATE OF OHIO PRIOR TO HIS TESTIMONY, [NOR] WAS [AN] EXPERT REPORT SUBMITTED 21 DAYS PRIOR TO TRIAL.

{¶ 44} Terry directs our attention to Crim.R. 16(K), the purpose of which is to "provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of

defendants, and to protect the well-being of witnesses, victims, and society at large."
Crim.R. 16(A).   Crim.R. 16(K) states:

> An expert witness for either side shall prepare a written report summarizing
> the expert witness's testimony, findings, analysis, conclusions, or opinion
> and shall include a summary of the expert's qualifications.   The written
> report and summary of qualifications shall be subject to disclosure under
> this rule no later than twenty-one days prior to trial, which period may be
> modified by the court for good cause shown, which does not prejudice any
> other party.   Failure to disclose the written report to opposing counsel shall
> preclude the expert's testimony at trial.

{¶ 45} Terry did not object to Kleman's testimony at trial.   It is well-settled that failure to object waives all but plain error. *State v. Bahns*, 185 Ohio App.3d 805, 2009-Ohio-5525, 925 N.E.2d 1025, ¶ 25 (2d Dist.), citing *McBride v. Quebe*, 2d Dist. Montgomery No. 21310, 2006-Ohio-5128.   "Plain error exists 'if the trial outcome would clearly have been different, absent the alleged error in the trial court proceedings.' "   *Id.*, citing *State v. Rollins*, 2d Dist. Clark No. 2005-CA-10, 2006-Ohio-5399.   We cannot conclude that the outcome of the trial would clearly have been different in the absence of Kleman's testimony regarding the damage to Terry's vehicle.   In other words, plain error is not demonstrated.

{¶ 46} Further, even if Terry had not waived this argument, it is clear that Kleman merely testified regarding his own observations of the damage to Terry's vehicle, not as an expert, and therefore Crim.R. 16 was not implicated.   Although Kleman noted his

training in crash reconstruction, he was not presented as an expert witness, and his testimony was not based upon any technical analysis or dependent upon his training as a crash reconstructionist. In other words, he did not offer an expert opinion. His testimony was cumulative to the testimony of Sagers, and Terry herself acknowledged that she hit first the guardrail and then the U-Haul. Terry's second assignment of error lacks merit and is overruled.

{¶ 47} Terry's third assignment of error is:

APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE INFRINGED BY PROSECUTORIAL MISCONDUCT.

{¶ 48} Terry cites an exchange in which the prosecutor asked her if she had any records or witnesses to establish that she suffered from PTSD or anxiety after the court ruled that such evidence was inadmissible. She argues that, in doing so, the prosecutor "implied that she was lying about these diagnoses," thereby putting her "in a very awkward position with the jury."

{¶ 49} "The test for prosecutorial misconduct is whether remarks [or prosecutors' actions] were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Jones*, 90 Ohio St.3d 403, 420, 739 N.E.2d 300 (2000), citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Garrett*, 171 Ohio St.3d 139, 2022-Ohio-4218, 216 N.E.3d 569, ¶ 144, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "Where it is clear

beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed." *State v. Stevenson*, 2d Dist. Greene No. 2007-CA-51, 2008-Ohio-2900, ¶ 42, citing *State v. Loza*, 71 Ohio St.3d 61, 78, 641 N.E.2d 1082 (1994).

{¶ 50} In the exchange at issue, Terry testified on direct examination that she had previously suffered a severe traumatic brain injury and had advised Kleman of this fact. When asked on cross-examination if it was her testimony that her behavior in the back of the cruiser resulted from the alcohol she consumed at the scene, Terry responded, "Coupled with my diagnoses." Then the following exchange occurred:

Q. * * * And you've mentioned that before. And again, 17 some odd exhibits have been presented today on your behalf, not one of them is a medical report regarding your anxiety, correct? Correct?

A. That's correct, it hasn't been presented to court today, no.

Q. And no other witnesses are coming in today to testify to any treatment that you might have had regarding these incidents?

A. No.

Q. So that's just your opinion as to what was going on?

A. No, it's my medical diagnoses that I have medical records for.

Q. I understand, ma'am, but you don't have those records here today, correct?

A. I, my attorney should have them in the file.

Q. Ms. Terry, you don't have those records here today?

A.  They haven't been presented here today.   I have them in my bag. * * *

Q.  We're going to move on.

{¶ 51} We agree with the State that Terry attempted to subvert the court's ruling regarding her prior injuries and their effects by alluding to her alleged traumatic brain injury and her "diagnoses."   As noted above, the court had specifically advised Terry not to "blurt" any such information at trial.   In attempting to introduce inadmissible evidence to explain her conduct, Terry opened the door to follow up questioning, and prosecutorial misconduct is not demonstrated.   The State's questions were not improper, and given the trial court's ruling excluding the evidence, prejudice is not demonstrated.   In other words, there was no prosecutorial misconduct, but even if there were, it is clear beyond a reasonable doubt that the jury would have found Terry guilty based on the overwhelming evidence against her, absent the alleged prosecutorial misconduct.   Terry's third assignment of error is overruled.

{¶ 52} Terry's fourth assignment of error is as follows:

THE COURT ABUSED ITS DISCRETION WHEN IT RULED THAT APPELLANT COULD NOT PRESENT EVIDENCE OF HER PTSD OR SEVERE TRAUMATIC BRAIN INJURY AT TRIAL TO EXPLAIN HER BEHAVIOR DURING THE INVESTIGATION AND AFTER HER ARREST.

{¶ 53} Terry argues that her diagnoses were "very relevant" and would have assisted her in describing her "very unorthodox behavior" leading up to her arrest and afterward.   According to Terry, the court's ruling "essentially crippled her defense."

{¶ 54} To be relevant and therefore admissible, evidence must have a "tendency

to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. Even if the evidence is relevant, it must be excluded under Evid. R. 403(A) "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 55} "The admission or exclusion of relevant evidence is within the sound discretion of the trial court, and we review that decision for an abuse of discretion." *State v. Santana*, 2d Dist. Montgomery No. 29348, 2022-Ohio-4118, ¶ 25, citing *State v. Jali*, 2d Dist. Montgomery No. 28294, 2020-Ohio-208, ¶ 39. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted). *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). It is well-settled that most abuses of discretion "will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 56} As noted above, Terry was the victim of domestic violence in 2006. Terry's proposed exhibit contained photos of her injuries from that attack. In September 2023, Terry was found sane at the time of the accident and competent to stand trial following evaluations performed at her request. Although we are sympathetic regarding the violence inflicted upon Terry, we cannot conclude that an abuse of discretion is demonstrated in the exclusion of this evidence. Defense counsel stipulated to the results of her forensic evaluations, and we agree with the trial court that the evidence of her

injuries and their alleged effects were not relevant to whether or not Terry committed OVI and disorderly conduct on February 22, 2022. Terry's fourth assignment of error is overruled.

{¶ 57} Terry's fifth assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED TRIAL COUNSEL'S MOTION FOR ACQUITTAL, OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL.

{¶ 58} Although Terry moved for an acquittal of the OVI charge or a new trial, her brief is limited to the denial of her motion for an acquittal. Terry argues that Ohio State Highway Patrol policy required Trooper Kleman to seize the bottle of Jagermeister in her car and that she should have been acquitted of the OVI charges because of the missing bottle. She cites Crim.R. 16(B)(5), which requires the State to provide in discovery upon request any evidence favorable to the defendant and material to guilt, and *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which held that "the suppression by the prosecution of evidence favorable to an accuses upon request violates due process when the evidence is material to guilt or to punishment * * *." Terry asserts that Section 4 of the Ohio State Highway Patrol policy governing "Administrative Inventory and Custody Report" (Defense Exhibit B) requires troopers to seize "contraband or other incriminating materials" found in a vehicle during an inventory search. According to Terry, given that she was charged with OVI, the open bottle of alcohol was incriminating material that should have been seized.

{¶ 59} Pursuant to Crim.R. 29(A), a court, on motion of a defendant or on its own

motion, "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because a Crim.R. 29 motion tests the sufficiency of the evidence presented at trial, rulings on Crim.R. 29 motions are reviewed under the same standards that apply to a review for sufficiency of the evidence." *State v. Kennard*, 2d Dist. Montgomery No. 29201, 2022-Ohio-2055, ¶ 17, citing *State v. Baker*, 2d Dist. Greene No. 2009-CA-62, 2010-Ohio-2633, ¶ 16; *State v. Crabtree*, 2d Dist. Champaign No. 2019-CA-1, 2019-Ohio-3686, ¶16, citing *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996).

{¶ 60} We conclude that there was sufficient evidence of OVI, and the trial court did not abuse its discretion in denying Terry's motion for acquittal based upon the missing bottle of alcohol. As the trial court noted, Terry was not charged pursuant to R.C. 4301.62 with possession of an open container of intoxicating liquor while operating a motor vehicle. Trooper Kleman testified that the bottle of Jagermeister was not contraband or evidence of a crime for which Terry would be charged, so he recorded its presence but did not seize it. As discussed above, there was overwhelming evidence of Terry's guilt of the OVI charges. She suggests that seizure of the bottle and its accompanying receipt would have established that she did not operate her vehicle while under the influence of alcohol, because she purchased the alcohol shortly before the accident and drank it at the scene after the accident. But her erratic driving prior to the accident, her failure to complete the field sobriety tests, and her belligerent behavior supported a conclusion that she committed OVI. Terry's fifth assignment of error is

accordingly overruled.

{¶ 61} Terry's sixth assignment of error is as follows:

THE APPELLANT WAS DEPRIVED OF HER CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HER TRIAL COUNSEL FAILED [TO] REQUEST FOR A PSYCHOLOGICAL EXPERT AT STATE'S EXPENSE.

{¶ 62} Terry asserts that she was in mental health treatment at the time of the accident due to the 2006 domestic violence attack. According to Terry, "[r]equesting [a] psychological or mental health expert could have assisted the jury with both proof of her diagnoses and also to demonstrate that her unorthodox behavior * * * could have been a result of [her] medical and mental health issues."

{¶ 63} We review alleged instances of ineffective assistance of trial counsel pursuant to the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which has been adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). *See also State v. Blanton*, 2023-Ohio-89, 206 N.E.3d 14, ¶ 56 (2d Dist.). To prevail on a claim of ineffective assistance, Terry must show that her trial counsel rendered deficient performance and that counsel's deficient performance prejudiced her. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. In the absence of a showing of either deficient performance or prejudice, a claim of ineffective assistance of counsel fails. *Blanton* at ¶ 56, citing *Strickland* at 697.

{¶ 64} To establish deficient performance, a defendant must show that trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688. In evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings." *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143, ¶ 29, citing *Strickland*.

{¶ 65} To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

{¶ 66} In reviewing ineffective assistance claims, we must not second-guess trial strategy decisions. *State v. Mason*, 82 Ohio St.3d 144, 157, 694 N.E.2d 932 (1998); *Strickland* at 689. Therefore, " 'trial counsel is allowed wide latitude in formulating trial strategy[.]' " *State v. Collins*, 2d Dist. Miami No. 2010-CA-22, 2011-Ohio-4475, ¶ 15, quoting *State v. Olsen*, 2d Dist. Clark No. 2009-CA-110, 2011-Ohio-3420, ¶ 121. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

{¶ 67} Given the results of Terry's forensic evaluations for sanity and competency and the resultant proper exclusion by the trial court of evidence of her alleged injuries and diagnoses, we cannot conclude that counsel acted ineffectively in failing to request an expert in psychology at the State's expense. We agree with the State that such a request would have been beyond the scope of reasonable assistance. We further cannot conclude that, if such a request had been made, it would have been granted, or that the outcome of the proceedings would have been different. Accordingly, Terry's sixth assignment of error is overruled.

{¶ 68} Terry's seventh assignment of error is as follows:

THE SENTENCE OF THE TRIAL COURT WAS CONTRARY TO LAW AND

IS NOT SUPPORTED BY THE RECORD.

{¶ 69} Terry argues that the trial court relied on unverified information in imposing sentence regarding alleged prior OVI offenses that occurred in Tennessee and Indiana, and that, as a result, her sentence was unduly long. Terry argues that she should be resentenced.

{¶ 70} R.C. 2929.21 and 2929.22 govern sentencing for misdemeanor offenses. The trial court is guided by the "overriding purposes of misdemeanor sentencing," which are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A); *State v. Bakhshi*, 2d Dist. Montgomery No. 25585, 2014-Ohio-1268, ¶ 47. "To achieve those purposes, the sentencing court [must] consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public,

or the victim and the public." R.C. 2929.21(A). The sentence must be "reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B); *State v. Collins*, 2d Dist. Greene No. 2012-CA-2, 2012-Ohio-4969, ¶ 9. A trial court has discretion to determine the most effective way to achieve the purposes and principles of misdemeanor sentencing, unless a mandatory jail sentence is required. R.C. 2929.22(A).

{¶ 71} R.C. 2929.22(B)(1) identifies seven factors for a trial court to consider in determining the appropriate sentence. These include the nature and circumstances of the offense(s); whether the offender has a history of persistent criminal activity and is likely to commit another offense; whether there is a substantial risk that the offender will be a danger to others; whether the victim's circumstances made the victim particularly vulnerable to the offense or made the impact of the offense more serious; and factors relating to the offender's military service, if any. *See* R.C. 2929.22(B)(1)(a)-(g). The court may also consider any other factors that are relevant to achieving the purposes and principles of misdemeanor sentencing. R.C. 2929.22(B)(2). Finally, the court must consider "any relevant oral or written statement made by the victim, the defendant, the defense attorney, or the prosecuting authority regarding sentencing for a misdemeanor." R.C. 2929.22(D)(1).

{¶ 72} R.C. 2929.22(C) further requires the trial court to consider the appropriateness of community control before imposing a jail term. The court may impose

the maximum jail term "only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime." *Id.*

{¶ 73} The trial court is not required to state on the record its reasons for the particular sentence it imposes. *Collin*s at ¶ 10. "If the sentence imposed is within permissible statutory limits, a reviewing court will presume that the trial court considered the sentencing factors in R.C. 2929.22(B), absent a showing to the contrary." *State v. Johnson*, 2d Dist. Greene No. 2004-CA-126, 2005-Ohio-6826, ¶ 9. We review misdemeanor sentences for an abuse of discretion. *State v. Peagler*, 2d Dist. Montgomery No. 24426, 2012-Ohio-737, ¶ 3; *Bakhshi* at ¶ 50.

{¶ 74} Terry was sentenced for OVI pursuant to R.C. 4511.19(G)(1)(c), which states:

> Except as otherwise provided in division (G)(1)(e) of this section, an offender who, within ten years of the offense, previously has been convicted of or pleaded guilty to two violations of division (A) of this section or other equivalent offenses is guilty of a misdemeanor. The court shall sentence the offender to all of the following:
>
> * * *
>
> If the sentence is being imposed for a violation of * * * division (A)(2) of this section, a mandatory jail term of sixty consecutive days. The court shall impose the sixty-day mandatory jail term under this division unless, subject

to division (G)(3) of this section, it instead imposes a sentence under that division consisting of both a jail term and a term of house arrest with electronic monitoring, with continuous alcohol monitoring, or with both electronic monitoring and continuous alcohol monitoring. The court may impose a jail term in addition to the sixty-day mandatory jail term. Notwithstanding the jail terms set forth in sections 2929.21 to 2929.28 of the Revised Code, the additional jail term shall not exceed one year, and the cumulative jail term imposed for the offense shall not exceed one year.

{¶ 75} Terry's presentence investigation report (PSI), which the court considered, reflected nine OVI or OVI-related offenses, including OVI convictions in 2021, 2016, 2007, 2005, and 2002. Three OVI charges had been amended to reckless operation (twice in 1999 and once in 1998), and there had been a physical control conviction in 2013. The PSI noted the out-of-State offenses but stated that the dispositions were unknown. Terry advised the court that she had been found not guilty in Indiana, and the Tennessee case had been dismissed for lack of probable cause. The court was also free to consider any uncharged conduct. The trial court reasonably concluded that Terry had been convicted on at least two prior offenses within ten years of the offense at issue in this case. We disagree with Terry that the court relied on "unverified information" for other states in imposing sentence. Terry's sentence was within the statutory range, and an abuse of discretion is not demonstrated. Terry's seventh assignment of error is overruled.

### Conclusion

{¶ 76} All of Terry's assigned errors have been overruled. Accordingly, the

judgment of the trial court is affirmed.

. . . . . . . . . . . . .


WELBAUM, J. and TUCKER, J., concur.